Our next case for argument is 24-1100, Hyundai Steel v. United States. Mr. Mills, please proceed. Good morning. May it please the Court. Brady Mills on behalf of Plaintiff Appellant Hyundai Steel. This case involves a so-called port usage rights program. Under this program, Hyundai Steel entered into a contractual agreement with the Government of Korea to construct a wharf at the port in Inchon Harbor, Korea. Hyundai Steel was required under the agreement to substantially pay for the construction of the wharf. Upon completion of construction, Hyundai Steel was then contractually obligated, pursuant to Korean law as well, to provide ownership of that wharf to the Government of Korea. In exchange for this constructing the wharf and providing it to the Government of Korea, Hyundai Steel was provided certain rights under this agreement to collect fees from certain users of this wharf. The period of time that the parties calculated it would take them to recover their construction costs was approximately 42 years. And so Hyundai Steel was given the right to collect these port fees from users. I think one of the challenges that I perceive that I'd like to have you address is why is this case not governed by AK Steel? And you cite some non-binding CIT decisions that seem to have not analyzed or really followed AK Steel. But I'm thinking AK Steel is still good law. And so why isn't this case governed by it? So I guess it's a two-part question. One, is it governed by it? And the second would be, if it is governed by it, is it distinguishable? How about that? I would say that there's several distinguishing factors about why we feel that AK Steel should not be followed by this court. First of all, that case was reviewing a 1993 case from the Commerce Department, certain steel products from Korea, which was decided under the pre-Uruguay Round Agreement law. And so the statute and regulations that existed at that time are different than what exists currently and what was before Commerce in this case. And so we think that in that case, the court, by definition, was not addressing whether this was a countervailable benefit under 19 U.S.C. 1677-5E or the regulations 19 CFR. So let's just start there. If the URA had never been passed, then would you agree that AK Steel controls? No, I would not agree. Oh, there'd still be something. Yeah. Okay. So can we just explore that before you get to your statutory or statutory regulatory argument? Sure. So we think that there's one very important factual distinction between what was the facts that were before the court in AK Steel and what's involved in our case. In that case, the issue was whether POSCO, who had also built a port berth, it wasn't a wharf, but it was a berth, and had paid for the construction and given ownership to the government, whether they were given free usage of the port berths. And so part of the facts involved in that case was building a port, giving ownership to the government, and then being able to use it for free. And so here in this case, the record is undisputed that Hyundai Steel actually paid for usage of this wharf. And so there wasn't the same factual situation where they were given free usage. And here's the problem I have with that distinction. It's clear from both the facts in AK Steel and the facts here that whether POSCO or you are exempted from paying usage fees or collecting third-party usage fees, the point of it is to reimburse you or POSCO for the cost of building out that port or that section of the port. And in that way, nevertheless, in AK Steel, we agreed with Commerce that a benefit was being provided, because it was very much akin to the provision of a specific infrastructure benefit. So if that's the only distinction, then I think AK Steel would control here. Again, assuming that there isn't something about the statute that changes everything. Yeah, I mean, I guess additional distinctions that we would draw is that, you know, it's clear in the AK Steel case that the decision was based on substantial evidence. The conclusion of the court's decision is we find that Commerce's decision is supported by substantial evidence. Our argument is grounded in the statute and exactly what the term benefit means under the new post-GRA law. And so we've relied on a dictionary definition of what constitutes a benefit. And so ours is more of a legal question about can Commerce interpret the new statute and what constitutes a countervailable benefit in a way that they can ignore the fact that the right that was given to Hyundai Steel here was not just to give them the right to collect money that the government would have otherwise collect, but it was actually to compensate them for building a wharf that is owned by the government of Korea. So what is it in the statute that is evidence that Congress and the URAA departed from the understanding of benefit as that question was evaluated in the AK Steel? Well, Your Honor, I would submit that in the AK Steel decision, there's not one reference to any statute or regulation. The discussion is purely factual. It was talking about conferring a benefit and there it was talking about conferring an infrastructure benefit that was specific. And here, you know, one could read and understand the facts here in the same way as when it comes to a benefit, unless you're telling me there's something in the statute as amended that, I don't know, was something of a game changer in terms of re-understanding the term benefit away from the way it was obviously understood and discussed in AK Steel. Yeah, I mean, I guess I would say that, you know, pre-URAA Commerce, the statute didn't have a specific provision that said what a benefit was. It talked about bounties or grants, right? And so Commerce had sort of an ad hoc practice of how they decided whether something was provided a bounty or grant. And part of that was the concept of a benefit, right? But they weren't constrained by any sort of statutory structure where Congress actually laid out. You know, the statute now has four examples of what constitutes a benefit. Those are just examples, though. Yeah, they're just examples. And so Congress, Commerce, we are not limited to those four examples in terms of trying to understand the meaning of benefit. Right, and Commerce has filled that additional gap in their regulations at 351.503B where they provide sort of a catch-all provision that if something is not specifically an enumerated benefit, you know, how they look to see whether it provides a countervailable benefit. And that language is whether a company is getting an input for less than what they would otherwise pay because of the government program or is getting more revenue than they would otherwise earn. And so again, our point is that the statutory framework and the regulation now make clear that with these examples and these descriptions of what constitutes a countervailable benefit, that the benefit actually has to provide some type of advantage or profit to the recipient. It can't just be, you know, Hyundai Steel received money. And part of our issue is that Commerce is just sort of myopically looking at this to see, okay, government provides money to Hyundai Steel. That's a countervailable benefit. And they're not taking into account the entire context. And we agree that, you know, in the AK Steel decision, you know, the issue was, you know, the court's rationale did seem to, on a substantial evidence basis, you know, didn't seem to have a problem with the fact that, you know, Hyundai, that POSCO in that case had built the port and given it to the government and that they were, they considered Commerce's treatment of that as being a countervailable benefit. They affirmed that on substantial evidence grounds. But, again, I strongly believe that that case, because it was decided when there was more of an ad hoc framework about what constituted a benefit and now, in this case, there's actually a statutory structure that has examples, Commerce has regulations that sort of expound further on what actually constitutes a countervailable benefit, that that's, you know, this case should be analyzed under that framework and not, you know, a case that was decided, you know, 26 years ago. And, frankly, I do think the factual distinction about. Counsel? Yes. Counsel, if we, if we decide and conclude that AKCL covers the same issue before us today, do you agree that the right outcome would be an affirmative? No, I mean, again, I just, I don't, I don't think, I'm not trying to be, to disagree with your premise completely, but I just think that AKCL was decided under, the court did not address under 19 U.S.C. 1677-5E and 305, 503B of Commerce's regulations, whether there was a countervailable benefit. And so, the idea that that case is somehow controlling 26 laters on a case with different facts, you know, I strongly resist that. And I think, and I do. What you're saying, but just take what my question was at face value. I basically suppose there's a hypothetical to you, right? I said, if we conclude, i.e., we be in the court, that AKCL addresses the same issue before us here today, do you agree under those circumstances that a firm would be the right outcome? Again, yeah, yes. I think if, obviously, if you conclude that a federal, a prior federal circuit case is identical in law and fact to the issue presented, that we're presenting to the court, then, you know, I guess AKCL would be controlling. But my point is that there's so many distinctions between what was before the court in AKCL and what's present in this case. And again, I know the CIT's decision that we cite in Hyundai Steel is only a CIT decision, but the court addressed our exact argument under the exact statutory framework, dealing with the exact facts. It did not address AK Steel, though. Is that right? No, the court did not address AK Steel. The government didn't argue AK Steel in that case. So, but again, that case dealt, you know, foursquare with what our argument is here, which is like we're looking at the actual statutory language, the regulatory language. We're saying countervailable benefit has to, you know, there's a meaning of what is a countervailable benefit. It's not enough to just show that a company received a benefit in the sense that they were able to collect fees. Commerce has to look at the totality of the program to determine whether what's going on here actually results in the company receiving some type of advantage or profit or countervailable benefit. And so, you know, again, we think that the Hyundai Steel case is directly on point for what we're arguing here. Do you want to save time for rebuttal? You're into your rebuttal time? Yes, yes. If there's no more questions, I'll reserve for rebuttal. Thank you. Good morning. Good morning, Your Honors. May it please the court. Christopher Barrage on behalf of the United States. AK Steel is still good law, and it does control in this case. So the Hyundai Steel is saying that this is somehow different or distinguishable from what Costco, sorry, Costco and the government of Korea did in the case, in AK Steel. But what happened in that case is exactly the same thing that happened here. The only difference is that Hyundai Steel built the, it built the North Port of Incheon, South Korea, and has exclusive access over this port. They're the only ones who operate it and use it for this very long period of time. And they're using it, they're allowed to collect berthing fees and harbor usage fees from the government of Korea. This is exactly what Costco was allowed to do when they constructed their berthing ports at a different port in Korea. Just so I understand, you said they are the exclusive user of this port, but then they're also collecting fees on this port from third parties. I don't see how those two fit together. So they are the exclusive user of the port, the North Port of Incheon. They are exempted from fees. So the government of Korea is foregoing revenue here because they would, the government of Korea otherwise would be entitled to collect fees from Hyundai Steel. Right. Now, I heard them disputing that, that they do pay fees. They don't pay berthing fees or harbor usage fees. Okay. Maybe they pay some other fees? There are other construction costs. I think, and I don't want to speak for Hyundai Steel, but I think what they're talking about is the construction costs that they incurred in actually building the port itself. But there's no dispute that they are exempted from these harbor usage fees and the berthing fees for the period of 41 years that they control this port. Even though the government of Korea technically owns it, Hyundai Steel controls it and operates it. So they're exempted from those fees. They also do charge some fees to third-party shipping companies that come in. And so what Commerce ended up doing in this case is they applied a 0.01% ad valorem countervailing duty rate on the fees that they took in for the period of review, the 2018 period of review, and divided that by the total sales of Hyundai Steel. And so they got a pretty small percentage, but a percentage nonetheless that they applied in this case. But back to the issue of AK Steel. It's the same basic facts and the same basic law. Now, Hyundai Steel is saying that this came into place before the URAA, and that's true. AK Steel was actually decided after the URAA, but the law at issue was pre-URAA. But the URAA doesn't do anything to change what is a countervailing subsidy. So the issue of whether a countervailable subsidy exists is the same analysis. So the actual statute, it's all about financial contribution. And Commerce looked at that in subsection, so it's 19 U.S.C. 1677. And in 5D2, it's foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions for taxable income. Foregoing or not collecting revenue that is otherwise due. So that's a financial contribution. And then next, the benefit conferred is a benefit, is a subsection E. A benefit shall normally be treated as conferred where there's a benefit to the recipient. Whether there's a benefit to the recipient, there are a list there, one through four, that talk about in situations that don't actually apply to this case. So this case does not have equity infusion, doesn't have a loan guarantee, or a good or service provided for less than adequate remuneration. Again, as the court said during Hyundai Steel's argument, it's not an exhaustive list. It's just a question of whether there's actually a benefit conferred to Hyundai Steel. And it's a really narrow issue here. The reality is that the government of Korea is saying, look, we won't collect fees, birthing fees or harbor usage fees for you for this period of time. And that is the benefit that's conferred. Commerce is following that statute. Now, there is a lot to be made in Hyundai Steel's brief about, well, it's not offsetting the construction costs, but offsetting is not contemplated for revenue foregone. That's not contemplated in the statute, and it's not contemplated in the regulations. So there are offsets in the statute. So it's not as if there aren't, that commerce never contemplates whether something could be offset by things, other costs that an exporter would incur. But those are limited. Is there a question as to whether the fact pattern of 8K Steel fits within the new statutory regime? I ask that because one way of reading the statutory regime, which is, I think, the way the CIT read it was, all I need to look at is to figure out whether this party, Hyundai, is collecting fees from third parties that the government of Korea otherwise wouldn't have been collecting, but gave that to Hyundai, period. I don't need to look any deeper than that. It can be that. I'll just use the term superficial. Now let's look at 8K Steel. 8K Steel didn't quite look at it that simply. It didn't just say, well, all we need to think about was the fact that Costco there didn't need to pay dockyard fees. They went further. They said, well, we have to look at the context of why they didn't pay dockyard fees, and they weren't paying dockyard fees as a form of allowing Costco to get reimbursed for all the costs Costco had to bear for building those 15 ports. And so in that way, we had some kind of version or something akin to a specific infrastructure benefit. So that kind of analysis, at a minimum, seems more subtle or nuanced than the simple, are you collecting fees that Korea otherwise would have been collecting? It may be more subtle, though I don't think that the court in 8K Steel looked, did a really expansive analysis of the birthing fees and the construction offset. It just said that the construction costs that were, which is exactly what Hyundai Steel is saying here, that the government of Korea is reimbursing us for the construction costs that we incurred when we built this port. This is exactly the same thing in 8K Steel. And the court in 8K Steel said, well, that is not, even though it's being framed as a reimbursement for those construction costs, it's still a countervailable subsidy because the government of Korea is foregoing fees that it otherwise could collect. So I don't, I guess the court could do that in this case, and it would be the exact same result. But I think that the, if you, just looking at the statute itself, post URAA, you can look at it, and if you read the statute, this is a countervailable subsidy. And then there are, you know, subsection C of 1977 says additionally that, you know, that commerce is not required to consider the effects of the subsidy in determining whether a subsidy exists. So again, whether it exists, they're not required to look at the effects of it. So whether Hyundai has made whole or not of their construction costs, that's not part of whether the subsidy exists. There is a narrow subset of cases where you're looking at that subsidy. What if the government of Korea struck a different bargain with Hyundai here, and it was something more like, hey, Hyundai, you can collect all these other usage fees from third parties for this port in Incheon. But at the same time, in order to get that, to get those monies, we want you to do something for us. You know, we want, like, I don't know, a thousand free cars for our police force from you, Hyundai. Would commerce under those circumstances say, hey, Hyundai, you're getting to collect all these harbor usage fees that otherwise would have gone to Korea? That's all I, commerce, need to look at. I don't have to worry about some other side story about you providing free cars to the government. This is the only thing I have to look at. Under the statute, you would confer a benefit, and that's countervailable, end of story. So I'm not entirely sure, Your Honor, if that, if they would be, so I don't think that they would be limited to. Would they turn a blind eye to the thousand free cars given to the Korean police force? No, I don't think that they would turn a blind eye to it. But they might. No, I don't think that they would turn a blind eye to it. I think it would be analyzed under a different provision of the countervailing duty statute, potentially. Well, what do you think? Do you think there should be a countervailing duty under those facts? I guess it would depend, it would depend on the, yes, I think so. Oh, so then, yeah. Say no, say no, say no. No, sorry. Maybe you don't want to buy in commerce. I think I got lost a little bit with the court's question. I apologize. Yeah, I think you did. Sorry about that. I haven't answered any more of the court's questions since the court asked me a question. Do you have any further questions? Well. I just have one little housekeeping question. Yes, Your Honor. Following up on, I think, a conversation that you were having with Judge Chin, my understanding was that Hyundai had received bursary income from third parties during the period of review. Is that after an understanding? That's correct. Okay, very good. Yes. All right, thank you, counsel. Thank you, Your Honor. We're about out of time. Let me give this another shot here. So the first point that I wanted to make is there was a discussion about, you know, the government suggesting that Hyundai Steel had exclusive rights to use this wharf, and that's absolutely not true. Part of the compensation that was contemplated in the agreement was that Hyundai Steel could collect birthing income from shipping companies, and they could also collect unloading charges from third parties. And so the agreement itself contemplated that there could potentially be use by third parties, and so there was no exclusivity in the agreement about Hyundai Steel being the only one that could use this wharf. The other point I'd like to make is in response to Judge Cunningham's question about AK Steel. There's another point that I didn't get to before about a distinguishing factor of AK Steel, and that's, you know, following that Certain Steel Products 1993 case, Commerce started developing a different way of looking at these port usage programs, and it's what we referred to in our brief as, like, an excessive benefit standard, where they looked to see how long was the free use period that a company was given. And so, for example, in, like, the Coldrolled case, Dongbu was given a 70-year period of free usage, and so Commerce looked at that and said, that's tantamount to giving ownership to Dongbu. And so, therefore, you know, they seemed to focus more on, like, the period of time that they were provided free usage of the port. And so we think this is another reason why, you know, that practice of excessive benefit did not exist at the time of the AK Steel decision, and so we think that's an additional sort of distinguishing factor about why the court should not follow AK Steel. Two other quick points that I'd like to hit on. The government argued about offsets, that the statute provides, you know, certain situations where, you know, Commerce can provide an offset to a countervailable subsidy. And, you know, those offsets are very narrowly construed. Our argument is not asking for any type of offset. This is really, like, a practical question of, can Commerce find a countervailable benefit, like an advantage or profit to a company, who incurs significant costs to build something for the government that the government owns, the government can collect fees from that wharf from users in perpetuity, and the government's tailoring their reimbursement, letting them collect fees for a finite period of time, and the record here shows that Hyundai Steel is never going to even come close to recovering the costs that it incurred in constructing this wharf. We provided a schedule in Appendix 03803. It lists the actual birthing income, which is really the main income that we've received, and it shows it for each year of the average useful life period from 2007 to 2018. And if you compare that to the actual schedule, Appendix 8 of the agreement, it has estimates of how much birthing income they were supposed to receive, and the actual amount they received is less than half of what is contemplated in this schedule. And so if that continues, then Hyundai Steel is never going to even recover the costs. So, again, we're just saying that, you know, and that commerce can't just myopically look and say, oh, Company A received money from the government. That's the end of the story. They have to take a holistic view and consider contrary evidence, which is an established principle that the agency has to take into account contrary evidence. And the contrary evidence in this case is that the only reason Hyundai Steel got the right to collect these fees is because they incurred tremendous costs in building this wharf that was then given to the government. I mean, building infrastructure is a governmental function, right? This is a wharf that the government has to own. And so because the government doesn't have enough money to pay for this, they contract out the private parties to do this. This is merely a contractual agreement between Hyundai and the government to build a wharf, and then they're given some limited reimbursement for their costs. And we submit that that is not a countable benefit under the statute, and we don't think AK Steel got into the minutia of this issue. And, frankly, the discussion in AK Steel is two paragraphs. It basically recites what Commerce said and then says, we're convinced that Commerce is right based on substantial evidence. There was no weighing of all the different arguments that I'm making here and the distinctions that have occurred post-URA. Counsel, do you agree that the length of Hyundai Steel's court usage rights is more than 41 years? No, it's absolutely not. The agreement provides the period where they have that right to operate and manage the wharf, and that's 41 years and 8 months is the exact amount. And so once that date comes and goes, if Hyundai Steel has not recovered their costs, then that's it. They're never going to recover them because their rights expire after 41 years and 8 months. So anyway, in conclusion, we strongly urge the court. I mean, I understand that AK Steel is the decision from this court and that it does have factual similarities, but I urge the court to look closely at the facts of this case and the changes in the law before deciding that AK Steel should control the outcome of this case. Thank you, counsel. We thank both counsel. This case is taken under submission.